RICHARD H. MEDINA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Medina v. Commissioner
Docket No. 9366-93
United States Tax Court
T.C. Memo 1994-85; 1994 Tax Ct. Memo LEXIS 86; 67 T.C.M. (CCH) 2277; February 28, 1994, Filed *86 Decision will be entered for petitioner. Richard H. Medina, pro se. For respondent: Carl D. Inskeep. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1988 in the amount of $ 13,287 and additions to tax under section 6651(a)(1) [1] in the amount of $ 3,322, section 6653(a)(1) in the amount of $ 664, and section 6654(a) in the amount of $ 848. The issues for decision are: (1) Whether $ 39,870 seized during a drug raid at which petitioner was present was taxable income to petitioner. We hold it was not. (2) Whether petitioner is liable for additions to tax for failure to file a return, negligence, and underpayment of estimated tax. We hold he is not. Petitioner concedes that he failed to report $ 1,560 earned doing automobile repairs at home, *87 but contends that was all the income he received and thus he was not required to file a Federal income tax return for 1988. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in San Antonio, Texas, at the time he filed his petition in this case. Petitioner did not file an income tax return for the year in issue. Petitioner is a car mechanic. In 1988 petitioner was unemployed except for occasional work on his own, for which he earned small amounts. Petitioner was separated from his wife. He lived with Maria Sanchez, the mother of his 18-month-old son, and cared for the child while Ms. Sanchez worked as a housekeeper. She earned approximately $ 7,000 per year and received $ 100 per month child support for an older daughter. During the year in issue, petitioner owned a 1978 Chevy van and a small house. He had purchased the van in 1985 with money he received that year upon retiring from Lackland Air Force Base. He still has the same van. He bought his house in 1988, the year in issue, from a neighbor who wanted to leave San Antonio and sold *88 it to petitioner for nothing down and assumption of the payments of $ 350 per month. [2]
On July 26, 1988, petitioner was arrested in Castroville, Texas, during a drug raid by Medina County Sheriff's officers. The raid followed a transaction involving the attempted purchase of 250 pounds of marijuana for $ 80,000, approximately half of which was presented to the arresting officers. Respondent's case rests on the allegations contained in the stipulated report of the arresting officer, Sgt. Armando Martinez. With one exception, discussed below, petitioner does not dispute Sgt. Martinez' account of the circumstances of the arrest. We generally base our findings on this report. On July 26, 1988, Martinez was advised by "UV-1" (apparently an undercover officer) that a suspect in San Antonio wanted to buy some marijuana. Martinez, along with another officer (J. Longoria) and UV-1 *89 -- posing as illegal drug sellers -- arrived at an undercover house in Castroville, Texas, at approximately 7:00 p.m. At about 7:20 p.m. they received a phone call from a confidential informant advising that he was with some potential drug law violators at the Lone Star Ice House (Ice House) [3] in Castroville. UV-1 told the informant to come to the undercover house so the buyers could see a quantity of marijuana as they had requested. About 10 minutes later a late model gray Oldsmobile pulled into the driveway with three men, including petitioner and the informant. The two men entered the house with the informant and identified themselves as Roland and Richard (petitioner). They viewed a quantity of marijuana. According to the report: Roland did most of the talking and stated that he had enough money at his house to buy all 250 lbs. of marijuana [4] that we had told him we had. Roland inspected the marijuana and passed it on to Richard who also inspected it. Roland further *90 advised in a boastful manner that he did not have to go to the bank, that he had the money in San Antonio. Roland assured us that he was a good buyer and that when he told us he was going to buy something he would buy it. Roland stated that it would be at least an hour before he would return to purchase the marijuana. Roland agreed to return and buy 250 lbs. at $ 500.00 per pound. Roland, petitioner, and the informant left and headed for San Antonio. At 9:50 p.m. the informant called again. He said Roland had the money, but wanted the sellers to take the marijuana to San Antonio to Roland's residence. UV-1 spoke to Roland and, after some discussion, agreed to take the marijuana to San Antonio, but only after he had seen the money first in Castroville. Roland agreed to bring half the money to Castroville and show it to the "sellers" in the Lone Star Ice House. Roland promised the money would be at *91 the Ice House in 30 minutes. Officer Martinez notified the Medina County Sheriff's Department to set up surveillance on the Lone Star Ice House. Officer Longoria would maintain surveillance across the street from the club and await a prearranged arrest signal to be given by UV-1 after Martinez and UV-1 had seen the money and determined it was for the purchase of marijuana. Longoria would then signal by radio for the deputies to approach the violators at the Ice House and make the arrest. At about 10:40 p.m. the informant arrived in his vehicle with petitioner. The officers approached the vehicle, and were handed a package they were told contained $ 40,000. [5] (Apparently Roland was not with them.) *92 UV-1 told petitioner that the police's undercover vehicle, a Jeep Cherokee, contained 250 lbs. of marijuana. Petitioner viewed the marijuana and agreed to drive the Cherokee to San Antonio and return with the rest of the money later that evening. Officer Martinez handed the Cherokee keys to petitioner, who got into the Cherokee to leave. Martinez then signaled the waiting deputies, identified himself as a police officer, and arrested petitioner. When Martinez counted the seized money with Chief Deputy Owen Samford, they found it to be $ 39,870, subsequently forfeited to the State of Texas. Petitioner made no claim to the money, insisting it belonged to Roland. Roland disappeared. On December 5, 1988, petitioner pled guilty to a charge in connection with his arrest, but unfortunately the record is silent as to the exact charge. Petitioner was sentenced to 10 years' probation and fined $ 5,000. ULTIMATE FINDING OF FACT The $ 39,870 seized in the drug raid did not belong to petitioner. OPINION Petitioner bears the burden of proving, by a preponderance of evidence, that respondent erred with regard to the tax deficiency and additions to tax. Rule 142(a). We hold that he *93 has met his burden. Petitioner claims that money seized in the drug raid was not his, but belonged to Roland. Petitioner testified he was just a runner paid to drive the car for the informant and Roland. He expected to receive $ 5,000 for this work and had agreed to do similar work in the future. Petitioner had no prior criminal record. The record supports petitioner. True, petitioner knowingly participated in an illegal act. However, there is not a shred of evidence that either the money or the gray Oldsmobile belonged to petitioner. Roland openly boasted that the money was his, and that he had more where that came from. Roland was the man who did all the talking, the one with whom the undercover officers had to deal, and the one who negotiated the terms of the purchase. Moreover, nothing in petitioner's lifestyle indicates he could have accumulated $ 40,000 to have purchased the drugs on his own. He credibly explained the source of funds for the purchase of a used van and a small house during the year in issue. He still drives the same car and lives in the same house. In 1988 a taxpayer who was married, filing separately, was required to file a Federal income tax return *94 if he earned $ 1,950 or more. Sec. 6012(a). Since petitioner earned only $ 1,560 during the year in issue, he was not required to file a Federal income tax return. Therefore, he is not liable for additions to tax for underpayment, failure to file, or negligence. For the foregoing reasons, Decision will be entered for petitioner. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This was a common practice in Texas in 1988, when real estate values had crashed, banks were failing, and foreclosures were commonplace.↩
3. Apparently a night club or bar.↩
4. In the police report marijuana is consistently misspelled "mariguana." We have corrected the spelling.↩
5. Here is the sole exception petitioner takes to the report. The report states, "Richard handed us a package which he said contained approximately $ 40,000.00". Petitioner insists he did not hand the money to the police; the informant did. In light of our findings below, we do not believe this discrepancy is material.↩